UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF IDAHO

| | |
|---|---|
| LARRY HANSLOVAN,<br><br>     Petitioner,<br><br>  v.<br><br>RANDY BLADES,<br><br>     Respondent. | Case No. 1:11-cv-00562-CWD<br><br>**MEMORANDUM DECISION<br>AND ORDER** |

Pending before the Court in this habeas corpus matter is Respondent's Motion for Summary Dismissal. (Dkt. 14.) The parties have consented to a United States Magistrate Judge conducting all proceedings, in accordance with 28 U.S.C. § 636(c). (Dkt. 9.) The Court finds that the parties have adequately stated the facts and legal arguments in their briefs and that the decisional process would not be significantly aided by oral argument. To avoid delay, the Court will decide this matter on the briefs and record without oral argument. D. Idaho L. Civ. R. 7.1.

After considering the parties' arguments, the Court will grant Respondent's Motion, and the Petition will be dismissed as untimely.

**MEMORANDUM DECISION AND ORDER - 1**

# BACKGROUND

The Idaho Court of Appeals recited the relevant events in this case as follows:

> In early March of 2008, Larry Dwight Hanslovan and his
> girlfriend, Barbara Lynn Dehl, sold nearly an ounce of
> methamphetamine to an undercover police officer and a
> confidential informant. Two weeks later, in an unrelated
> incident, Hanslovan and Ronald John Huntsman, Sr., forced
> two people into a car at gunpoint. The two victims were taken
> to Dehl's home, bound with packing tape, and beaten in an
> attempt to obtain confessions regarding items missing from
> Dehl's residence. John Albert Schmeichel was eventually
> implicated in the theft. Hanslovan and Huntsman took one of
> the victims with them to find Schmeichel. Huntsman then shot
> and killed Schmeichel on the return trip while Hanslovan
> drove the car. The two remaining victims were eventually
> released.

(State's Lodging B-4, pp.1-2.)

A grand jury indicted Hanslovan ("Petitioner") and Barbara Dehl on felony

charges of trafficking in methamphetamine and two counts of kidnapping, one for each

kidnapping victim (Kyle Quinton and B.D, a minor female), but neither Petitioner nor

Dehl were charged with Schmeichel's murder. (State's Lodging A-1, pp. 11-13.) The

grand jury also indicted Petitioner with two counts of the use of a deadly weapon in the

kidnapping incident. (*Id*.) The drug trafficking count was severed and amended to a

charge of delivery of a controlled substance, and both Petitioner and Dehl eventually pled

guilty to the amended charge. (State's Lodging A-4, pp. 9-35.) The kidnapping counts

and the weapons charges were set for trial.

The prosecutor eventually offered a "package plea agreement" to Petitioner and

**MEMORANDUM DECISION AND ORDER - 2**

Dehl. In exchange for their guilty pleas to one count of second-degree kidnapping, the prosecutor would dismiss all other counts and would limit her sentencing recommendation to eighteen years for Petitioner and to eight years for Dehl, with their sentences for kidnapping to be served concurrently with the their sentences for delivery of a controlled substance. (State's Lodging A-6.) Under this arrangement, both defendants had to plead guilty and, if either defendant withdrew his or her plea, the other defendant's guilty plea would be set aside. (*Id*.) Petitioner and Dehl took the offer and each pled guilty to second-degree kidnapping. (State's Lodging A-4, pp. 36-76.) Petitioner chose to plead guilty to the count alleging that he had kidnapped Kyle Quinton. (*Id*.)

Before sentencing, Petitioner moved to withdraw his guilty plea, alleging that he had been coerced into pleading guilty, in part, because of a secret deal that he and his attorney had made with Dehl and her counsel. (State's Lodging A-1, pp. 103-04.) To add an incentive for Petitioner to accept the prosecutor's package offer, according to Petitioner, Dehl's brother promised to put money into his prison commissary account and to provide work for him and the use of a vehicle when he was released from prison (*Id*.) At the hearing on his motion, Petitioner denied that he had kidnapped Quinton and said that he had admitted the kidnapping when he entered his guilty plea only because his attorney instructed him to do so. (State's Lodging A-4, p. 84.)

The district court denied the motion. Although it was troubled by the alleged secret deal between the parties and their attorneys, and it remarked that they might have perpetrated a fraud on the court, the presiding judge concluded that Petitioner nonetheless

**MEMORANDUM DECISION AND ORDER - 3**

entered his guilty plea knowingly and voluntarily. (State's Lodging A-1, pp. 33-34.) The court also found no other "just cause" to allow the withdrawal of the guilty plea. (*Id.*)

At sentencing, the trial court followed the plea agreement and sentenced Petitioner to eighteen years in prison, with ten years fixed, for second-degree kidnapping, and to a concurrent term of fifteen years, with five years fixed, for delivery of a controlled substance. (*Id.* at 4.) The court later denied Petitioner's motion under Idaho Criminal Rule 35 to reduce his sentences. (*Id.* at 4.)

On appeal, the Idaho Court of Appeals affirmed the district court's order denying Petitioner's motion to withdraw his plea and its order denying the Rule 35 motion. (Dkt. 1-1, p. 9.) The Idaho Supreme Court declined to review that decision, and it issued a Remittitur on December 29, 2008. (Dkt. 1-1, p. 14.)

Five months later, on June 5, 2009, Petitioner filed a second motion to withdraw his guilty plea, this time claiming that Kyle Quinton had come forward to claim that Petitioner did not "kidnap" or "threaten" him in any way. (State's Lodgings C-1, C-2.) Petitioner supported his motion with a handwritten affidavit from Quinton. (State's Lodging C-2.)

The district court did not act on the new motion to withdraw for nearly two years, until early 2011. It then appointed counsel for Petitioner, held a hearing, and denied relief on the ground that it had lost jurisdiction to amend the judgment after the Idaho Supreme Court issued its Remittitur on direct appeal in late 2008, before the motion to withdraw was filed. (State's Lodgings C-14, C-15.) The trial court entered its order of dismissal on

**MEMORANDUM DECISION AND ORDER - 4**

July 25, 2011. (State's Lodging C-14.)

Petitioner next filed a state habeas corpus petition in the district court, relying on the same Quinton affidavit to support his claims. (State's Lodging D-4.) The court concluded that Petitioner was improperly attempting to use the remedy of habeas corpus as a substitute for a direct appeal or post-conviction relief, and it dismissed the petition. (State's Lodging D-7, p. 2.)

Petitioner did not appeal, choosing instead to raise the same claims in a new habeas corpus petition, filed as an original action in the Idaho Supreme Court. (State's Lodging E-1.) After ordering a response from the State, the Idaho Supreme Court dismissed the petition, ruling that an original action was improper because Petitioner had failed to appeal from the district court's denial of relief on the same claims and that the district court's order was "res judicata." (State's Lodging E-5.)

On November 15, 2011, Petitioner lodged his Petition for Writ of Habeas Corpus in this Court. (Dkt. 1.) In the Petition, he raises the following three claims: (1) he is actually innocent of "the crime" (apparently referring to the kidnapping conviction); (2) he was deprived of his Sixth Amendment right to the effective assistance of counsel because his "attorney was aware that the statement of the victim was coerced"; and (3) he was deprived of due process of law under the Fourteenth Amendment because the "Ada County Prosecutor coerced a statement from a victim, knew the statement was false, and continued to use the statement even though they knew it was false." (Dkt. 1, pp. 1-3.)

This Court conducted an initial review of the Petition and ordered the Clerk to

**MEMORANDUM DECISION AND ORDER - 5**

serve it on Respondent. (Dkt. 6.) Respondent has since filed a Motion for Summary

Dismissal, contending that Petitioner filed his Petition after the expiration of the one-year

statute of limitations for initiating habeas corpus actions and, alternatively, that none of

Petitioner's claims were fairly presented to the Idaho Supreme Court and must be

dismissed as procedurally defaulted. (Dkt. 12.)

　　　Petitioner has submitted a Motion for Counsel (Dkt. 16), a Motion to Take Judicial

Notice (Dkt. 24), and his Response to Respondent's Motion to Dismiss (Dkt. 14). These

matters are now fully briefed, and the Court is prepared to issue its ruling.[1]

### PETITIONER'S MOTION FOR THE APPOINTMENT OF COUNSEL

　　　Petitioner requests the Court to appoint counsel to assist him in this case. There is

no constitutional right to counsel in a habeas corpus action. *Coleman v. Thompson,* 501

U.S. 722, 755 (1991). A habeas petitioner does have a right to counsel, as provided by

rule, if an evidentiary hearing is required. *See* Rule 8(c) of the Rules Governing Section

2254 Cases.

　　　In addition, the Court may exercise its discretion to appoint counsel for an indigent

petitioner in any habeas case where required by the interests of justice. 28 U.S.C. §

2254(h); 18 U.S.C. § 3006A(a)(2)(B). Whether counsel should be appointed turns on

Petitioner's ability to articulate his claims in light of the complexity of the legal issues

---

[1] Respondent's Motion to File Oversize Brief in support of his Motion for Summary Dismissal will be granted, and the brief is properly filed. Also, Respondent's Motion to Seal the lodging of the grand jury transcript will be granted in light of the confidential nature of grand jury proceedings under Idaho state law. The grand jury transcript will remain sealed.

**MEMORANDUM DECISION AND ORDER - 6**

and his likelihood of success on the merits. *See Weygandt v. Look*, 718 F.2d 952, 954 (9th Cir. 1983).

Here, an evidentiary hearing will not be necessary, and Petitioner has shown an ability to articulate his claims and present his opposition to Respondent's dispositive motion quite well for a pro se litigant. He has not otherwise convinced the Court that the appointment of counsel is necessary to further the interests of justice, and the motion will be denied.

## MOTION TO TAKE JUDICIAL NOTICE

Petitioner next asks the Court to take judicial notice of a new affidavit from Kyle Quinton – dated August 7, 2012 – that Petitioner has lodged with the Court. (Dkt. 24.) This request will be denied in part and granted in part.

Under Rule 201 of the Federal Rules of Evidence, the Court may take judicial notice of facts that are "not subject to reasonable dispute" when they are either (a) "generally known within the trial court's territorial jurisdiction" or (b) "can be accurately and readily determined from sources whose accuracy cannot reasonably be questioned." *Id*. The credibility and reliability of Kyle Quinton's factual assertions in his recent affidavit regarding Petitioner's involvement in these crimes are certainly not beyond reasonable dispute. As such, the Court will not take judicial notice of those assertions as established facts.

However, the Court has the discretion to expand the existing record with new material for the limited purpose of resolving Respondent's present Motion for Summary

**MEMORANDUM DECISION AND ORDER - 7**

Dismissal. Rule 7 of the Rules Governing Section 2254 Cases. This is so because the Court is not limited to the record that was before the state court when assessing threshold procedural matters like those at issue here. *See*, *e.g.*, *Cristin v. Brennan*, 281 F.3d 404, 412 (3rd Cir. 2002).

Petitioner argues that Quinton's two affidavits contain compelling evidence of his actual innocence, which can be a potential equitable reason to excuse an untimely filing or to overlook a petitioner's failure to properly exhaust his habeas claims in the state courts. *See Lee v. Lampert*, 653 F.3d 929, 932-33 (9th Cir. 2011) (statute of limitations); *see also Coleman v. Thompson*, 501 U.S. 722, 750 (1991) (procedural default). The Court will, therefore, exercise its discretion under Rule 7 to expand the record with Quinton's November 2012 Affidavit for the limited purpose of resolving Respondent's dispositive motion. And, the Court will discuss the statements in Quinton's affidavits in greater detail in the next section of this Memorandum Decision.

## RESPONDENT'S MOTION FOR SUMMARY DISMISSAL

Respondent relies on two theories to support his motion to dismiss. First, he argues that the one-year statute of limitations expired in this case on January 18, 2010, and that Petitioner filed his Petition nearly two years out of time in November of 2011. (Dkt. 14-1, p. 8.) Respondent next contends that Petitioner did not properly exhaust his state court remedies as to any claim that he has raised, and because it is too late to do so now, the claims are procedurally defaulted.

For the reasons that follow, the Court is persuaded by Respondent's first argument.

MEMORANDUM DECISION AND ORDER - 8

The Petition will be dismissed on that basis, and the Court will not reach the procedural default issue.

## 1.      Standard of Law

The Petition is governed by the provisions of the Anti-Terrorism and Effective Death Penalty Act (AEDPA). Under AEDPA, a one-year period of limitation applies to an application for a writ of habeas corpus. 28 U.S.C. § 2244(d)(1). The one-year period begins to run from the date of one of four triggering events, as specified in 28 U.S.C. § 2244(d)(1)(A)-(D). The most common triggering event is the date upon which the judgment became final, either after the direct appeal or after the time for seeking an appeal expired. 28 U.S.C. § 2244(d)(1)(A).

The statute provides tolling (suspending) of the one-year limitations period for all of "[t]he time during which a properly filed application for State post-conviction or other collateral review with respect to the pertinent judgment or claim is pending." 28 U.S.C. § 2244(d)(2). This is known as "statutory tolling."

A state court application for post-conviction or other collateral review is "properly filed," and tolls the federal limitations period, only when "its delivery and acceptance are in compliance with applicable [state] laws and rules governing filing." *Artuz v. Bennet*, 531 U.S. 4, 8 (2000). An application that is dismissed as untimely was never "properly filed," and the limitations period is not suspended during the time between the petitioner's submission of the application in the state court and the state court's order of dismissal. *Pace v. DiGuglielmo*, 544 U.S. 408, 414-15 (2005).

**MEMORANDUM DECISION AND ORDER - 9**

The limitations period may also be tolled for equitable reasons when extraordinary circumstances outside of the petitioner's control prevented him from filing on time (known as "equitable tolling"). *See, e.g., Shannon v. Newland*, 410 F.3d 1083, 1089-90 (9th Cir. 2005). A litigant seeking equitable tolling bears the burden of establishing (1) that he has been pursuing his rights diligently and (2) that some extraordinary circumstance stood in his way. *Holland v. Florida*, 130 S.Ct. 2549, 2560 (2010).

The United States Court of Appeals for the Ninth Circuit has recently recognized that equitable tolling may also be based on a credible showing of "actual innocence." *Lee v. Lampert*, 653 F.3d 929, 932-33 (9th Cir. 2011). In *Lee*, the Circuit Court adopted the legal standard for assessing such claims from *Schlup v. Delo*, 513 U.S. 298, 324 (1995). Under that standard, the petitioner must come forward with "new reliable evidence – whether it be exculpatory scientific evidence, trustworthy eyewitness accounts, or critical physical evidence – that was not presented at trial." *Schlup*, 513 U.S. at 324. The petitioner bears the burden of demonstrating that, "in light of all the evidence, including evidence not introduced at trial, it is more likely than not that no reasonable juror would have found [him] guilty beyond a reasonable doubt." *Id.* at 327; *see also House v. Bell*, 547 U.S. 518, 539 (2006). The actual innocence standard is demanding and permits review only in "'extraordinary'" cases. *Schlup*, 513 U.S. at 327 (citation omitted).

With these standards in mind, the Court now turns to the arguments in the present case.

**MEMORANDUM DECISION AND ORDER - 10**

**2.      The Limitations Period Was Not Statutorily Tolled**

The parties agree that Petitioner's judgment became final on January 18, 2009, after the Idaho Supreme Court issued its Remittitur on direct appeal and the 90 day-deadline to file a petition for a writ of certiorari in the United States Supreme Court had expired. (Dkt. 14-1, p. 8; Dkt. 18, p. 2.) The one-year limitations period started to run the next day, on January 19, 2009. 28 U.S.C. § 2244(d)(1)(A).

The period then ran for 137 days before Petitioner filed his second motion to withdraw his guilty plea on June 5, 2009. (State's Lodging C-1.) That motion sat idle on the court's docket without any activity for nearly two years, before the court appointed counsel for Petitioner, held a hearing, and then dismissed the motion because it "lost jurisdiction in 2008 after the Remittitur by the Idaho Appellate Court was entered." (State's Lodgings C-14, C-15.) Petitioner did not appeal from that decision.

Respondent argues that because the state court found that Petitioner had not filed his motion in a timely manner and that it had lost jurisdiction in 2008, the motion was never "properly filed" such that AEDPA's statute of limitations could be tolled under 28 U.S.C. § 2244(d)(2). In other words, the limitations period continued to run while the motion to withdraw was pending, and it expired on January 18, 2010, well before the Petitioner filed his Petition in federal court. The Court agrees.

The state court's ruling fell squarely in line with Idaho law. Specifically, several years earlier, the Idaho Supreme Court held that a district court loses jurisdiction to consider a motion to withdraw a guilty plea filed under Idaho Criminal Rule 33(c) upon

**MEMORANDUM DECISION AND ORDER - 11**

the "expiration of the time for appeal or by affirmance of the judgment." *State v. Jakoski*, 79 P.3d 711, 714 (Idaho 2003). The Idaho Supreme Court further determined that a Rule 33(c) motion could not be liberally construed as an application for post-conviction, because "[i]t would be too much of a stretch to hold that a motion filed in a criminal case can be considered as a pleading commencing civil litigation." *Id.*

As in *Jakoski*, Petitioner relied exclusively on Rule 33(c) to support his motion to withdraw, which he filed over five months after the judgment became final upon the conclusion of his direct appeal. Accordingly, the state district court's decision that the motion was untimely, and that it lacked jurisdiction, flowed directly from *Jakoski*. Respondent is correct that Petitioner did not submit his motion "in compliance with applicable laws and rules governing filing," meaning that it was never "properly filed" under state law. *Artuz v. Bennet*, 531 U.S. 4, 8 (2000); *see also Pace v. DiGuglielmo*, 544 U.S. 408, 414-15 (2005) (following *Artuz* to hold that an untimely post-conviction action is not "properly filed"). Because the motion was not properly filed, and because Petitioner did not have any other properly filed collateral actions pending during that same time period, Petitioner's situation does not qualify for statutory tolling under § 2244(d)(2). As a result, AEDPA's one-year clock continued to run, expiring on January 18, 2010, and Petitioner's two state habeas corpus actions could not breathe new life into a limitations period that already had expired. *See Ferguson v. Palmateer*, 321 F.3d 820, 823 (9th Cir. 2003).

Absent equitable tolling, the Petition in this case was filed nearly two years out of

MEMORANDUM DECISION AND ORDER - 12

time.

### 3.   Petitioner Has Not Established that He is Entitled to Equitable Tolling

Equitable tolling is a narrow and demanding exception that requires a petitioner to bear the burden of showing (1) that he has been pursuing his rights diligently and (2) that some extraordinary circumstance stood in his way. *Holland v. Florida*, 130 S.Ct. 2549, 2560 (2010).

Petitioner argues that it would be fundamentally unfair not to toll the limitations period in his case. He contends that he should not be penalized for the state district court's lengthy delay in taking up his second motion to withdraw his guilty plea. Although unstated, Petitioner seems to imply that a quicker resolution by the state court would have allowed him to have filed his federal habeas petition sooner, and that the state court's delay was an extraordinary circumstance beyond his control.

The Court is not persuaded by Petitioner's argument for two reasons. First, to be entitled to equitable tolling, a habeas petitioner must have exercised reasonable diligence throughout the entire time period that he seeks to have tolled. *Pace v. DiGuglielmo*, 544 U.S. 408 (2005) ("[a] petitioner's lack of diligence precludes equity's operation."). Here, Petitioner has alleged no facts that might establish diligence; he apparently did not inquire about the status of his motion to withdraw, or submit any new filings, until he requested the appointment of counsel in January of 2011. A reasonably diligent petitioner would have followed-up long before then.

Second, and more important, the United States Supreme Court already has

**MEMORANDUM DECISION AND ORDER - 13**

addressed and rejected a similar argument. In *Pace v. DiGuglielmo*, the petitioner pointed out that a state prisoner who is "trying in good faith to exhaust state remedies may litigate in state court for years only to find out at the end that he was never properly filed, and thus that his federal habeas petition is time barred." 544 U.S. at 416 (internal quotations marks omitted). Pace claimed that such a result would be unfair to a prisoner who was attempting to comply with another AEDPA requirement – state court exhaustion – before asking for federal habeas relief. The Supreme Court was unconvinced, finding that a prisoner "might avoid this predicament, however, by filing a 'protective' petition in federal court and asking the federal court to stay and abey the federal habeas proceedings until state remedies are exhausted." *Id.* (citing *Rhines v. Weber*, 544 U.S. 269, 278 (2005)). That finding has relevance in the case at hand, because the risk that the district court eventually would find that it lacked jurisdiction to consider Petitioner's motion to withdraw his guilty plea was considerable in light of the *Jakoski* rule. Yet Petitioner did not file a "protective petition" in federal court to obtain an earlier filing date or seek a stay while he attempted to complete his state court collateral actions.

Next, relying on two affidavits from Quinton, Petitioner claims that his failure to comply with the statute of limitations should be disregarded because he is actually innocent of the crime of kidnapping. Specifically, he contends that the Quinton affidavits prove that Quinton "was not kidnapped by Petitioner; [sic] but instead that the Petitioner probably saved his life." (Dkt. 18, p. 5.) After reviewing the affidavits and the record, this Court does not find that Petitioner has stated a compelling claim that meets the narrow

**MEMORANDUM DECISION AND ORDER - 14**

actual innocence standard.

As an initial matter, Quinton's credibility can reasonably be questioned. *See Schlup v. Delo*, 513 U.S. 298, 331-32 (1995) (noting that courts assessing actual innocence claims may "consider how the timing of the submission and the likely credibility of the affiants bear on the probable reliability of that evidence"). Quinton had a longstanding and close relationship with Petitioner; he has described Petitioner as a "friend of the family," unlike Ronald Huntsman, Jr., or Barbara Dehl, whom he did not know well. (State's Lodging A-2, p. 19.) Consistent with that, Quinton's father testified at the sentencing hearing that Petitioner "treat[ed] [Kyle Quinton] like a son," spent time with him, and even took him on vacations. (State's Lodging A-4, p. 219.) Moreover, Quinton has since been convicted of several crimes and is now serving a prison sentence. *See* www.accessidaho.org/public/corr/. These circumstances undermine Quinton's trustworthiness as an impartial witness.

More importantly, Quinton's new statements simply do not make a prima facie case of Petitioner's actual innocence. Instead, they amount to a conclusory assertion or an opinion that Petitioner did not commit the crime of kidnapping, without specific facts that objectively would support that assertion. Kidnapping is defined under Idaho law, in relevant part, as: "[s]eiz[ing], confin[ing], inveigl[ing] or kidnap[ing] another, with intent to cause him, without authority of law, to be secretly confined or imprisoned within this state, or to be sent out of this state, or in any way held to service or kept or detained

**MEMORANDUM DECISION AND ORDER - 15**

against his will." Idaho Code § 18-4501(1).[2] A review of the record shows that the evidence was more than sufficient to support Petitioner's guilt as to that crime.

In his grand jury testimony, Quinton testified that he was awakened by Petitioner and Huntsman while he was sleeping at a house in Boise. (State's Lodging A-2, p. 23.) According to Quinton, Petitioner was holding a .38 caliber handgun, Huntsman punched Quinton in the face, and Petitioner and Huntsman then forced Quinton and his companion, B.D., to go to a house in Nampa. (State's Lodging A-2, pp. 23-24.) Quinton felt that he had no choice but to leave Boise and go with Huntsman and Petitioner. (*Id*. at 25-26.) Once at the Nampa home, Quinton and B.D. were beaten, tied to chairs, and, at one point, Petitioner held a hacksaw to B.D.'s leg while Huntsman yelled at them to confess to having stolen some of Barbara Dehl's property. (*Id*. at 30-31.) Quinton and B.D. conceded that Petitioner was eventually responsible for releasing them to a motel in Boise, where he warned them to "be careful" because Huntsman was "looking for you guys." (*Id*. at 44, 77.)

In addition to the grand jury testimony, Petitioner also made incriminating statements under oath at his change of plea hearing. Although he denied that he had a handgun, he admitted that Huntsman had brandished one and that Petitioner assisted Huntsman in taking Quinton to Nampa against his will. (State's Lodging A-4, pp. 57-58.) He agreed that Quinton would have felt "coerced and forced" by his actions in joining

---

[2]  Because the State did not allege that Petitioner had taken Quinton for ransom, or with the intent to commit a sexual crime, the charge was kidnapping in the second degree. Idaho Code § 18-4503.

them. (*Id.* at 59.)

Before sentencing, Quinton submitted a written statement to the Court, which was included in the Presentence Investigation Report. His statement was similar to his grand jury testimony, although in his presentence statement, he claimed that Huntsman had the handgun instead of Petitioner and that "if it wasn't for [Petitioner], Ron would have killed [B.D.] and me." (State's Lodging A-7, p. 7.) But in a follow-up interview with the presentence investigator, Quinton admitted that his written statement was not "completely factual" because, contrary to what he had written, Petitioner did, in fact, have the gun. (*Id.* at 7.)

This record provides a strong factual basis that Petitioner "seized or confined" Quinton and caused him to be "secretly confined, imprisoned, or detained" against his will. This is true regardless of whether Petitioner had the gun or Huntsman had the gun, because Petitioner knew that force was being used in either case, and he further admitted to the trial court that he assisted in making Quinton go to Nampa, where he continued to be detained. That Petitioner's actions may have prevented Huntsman from killing Quinton or B.D., or that, days later, Petitioner helped Quinton and B.D. "escape" and warned them about Huntsman, is immaterial to the kidnapping that already had occurred.

Against this backdrop, nothing in either of Quinton's post-judgment affidavits materially undercuts Petitioner's conviction.  In his 2007 Affidavit, Quinton states that "at no time did [Petitioner] kidnap me, nor did I feel threatened by [Petitioner] or his actions on the day in question." (Dkt. 1-3, p. 7.) He further claims that "it was a direct result of

**MEMORANDUM DECISION AND ORDER - 17**

[Petitioner's] actions that I am alive today." (*Id.*) In his August 2012 Affidavit, he reiterates that he "was not kidnapped by [Petitioner]," that he was "forced, or compelled to give testimony . . . under threat of being prosecuted," and that for many years he has "lived in torment because of the false testimony that [he] gave during the original proceedings in State Court in this case." (Dkt. 24, August 7, 2012 Quinton Aff., pp. 1-2.)

In neither of these affidavits, however, does Quinton indicate which part of his testimony was false. He also has failed to set out any facts showing what Petitioner allegedly did or did not do on the night of the kidnapping and the days that followed. He does not claim, for instance, that Petitioner was absent when he and B.D. were taken from the house in Boise and transported to Nampa, or that Petitioner was absent at the house in Nampa when they were bound and beaten. Nor does he state that, even if Petitioner were present, Petitioner did not participate or assist in any of the activities that resulted in Quinton believing that he was being detained against his will.

Rather than comprising "new" evidence, Quinton's statements are more or less in line with what already was known about Petitioner's role; namely, that Petitioner may have been a moderating presence among other much more aggressive and unstable actors, but he assisted Dehl and Huntsman in bringing Quinton and B.D. to Nampa and detaining them against their will to "investigate" whether they had stolen Dehl's property. Petitioner admitted as much under oath at his change of plea hearing. Quinton's personal belief that Petitioner did not kidnap him because he thinks that Huntsman and Dehl were more at fault does not change the evidentiary calculus in a material way.

**MEMORANDUM DECISION AND ORDER - 18**

Petitioner's burden is a heavy one. It is not sufficient for him to raise some doubt that did not exist before. Instead he must establish that it is more likely than not that *no* reasonable juror would now vote to find him guilty. *Schlup*, 513 U.S. at 327. Given the strength of the evidence and the conclusory nature of Quinton's more recent statements, the Court concludes that Petitioner has failed to carry his burden. Similarly, the Court does not find that further evidentiary development or an evidentiary hearing on this question is necessary, because Petitioner has not alleged facts that, if developed and proven to be true, would establish that "it is more likely than not that no reasonable juror would have found [him] guilty beyond a reasonable doubt." *Schlup*, 513 U.S. at 324.

Based on the foregoing, the Court concludes that the Petition is untimely under 28 U.S.C. § 2244(d) without a showing of statutory or equitable tolling that would save it from dismissal. Respondent's Motion for Summary Dismissal will be granted.

## CERTIFICATE OF APPEALABILITY

In the event Petitioner files a timely notice of appeal, the Court must on its own initiative evaluate this case for suitability of a certificate of appealability ("COA").  *See* 28 U.S.C. § 2253(c); Rule 11 of the Rules Governing Section 2254 Cases.

A habeas petitioner cannot appeal unless a COA has issued. 28 U.S.C. § 2253. A COA may issue only when the petitioner "has made a substantial showing of the denial of a constitutional right." 28 U.S.C. § 2253(c)(2). This showing can be established by demonstrating that "reasonable jurists could debate whether (or, for that matter, agree that) the petition should have been resolved in a different manner" or that the issues were

**MEMORANDUM DECISION AND ORDER - 19**

"adequate to deserve encouragement to proceed further." *Slack v. McDaniel*, 529 U.S. 473, 484 (2000) (citing *Barefoot v. Estelle*, 463 U.S. 880, 893 & n.4 (1983)).

This Court does not believe that reasonable jurists would debate its determination that the Petition in this case is untimely without a showing of statutory or equitable tolling. The Court will not issue a COA, though Petitioner is advised that he may still seek one in the Ninth Circuit Court of Appeals pursuant to Rule 22 of the Federal Rules of Appellate Procedure and Local Ninth Circuit Rule 22-1. To do so, he must first file a timely notice of appeal in this Court.

## ORDER

**IT IS ORDERED:**

1.      Respondent's Motion to Seal (Dkt. 12) is GRANTED.

2.      Respondent's Motion to File Oversize Brief (Dkt. 13) is GRANTED.

3.      Petitioner's Motion for Counsel (Dkt. 16) is DENIED.

4.      Petitioner's Motion to Take Judicial Notice of Affidavit of Kyle Quinton (Dkt. 24), construed as a motion to expand the record to include Quinton's August 7, 2012 Affidavit to support Petitioner's Response to Respondent's Motion to Dismiss, is GRANTED, but consideration of the Affidavit has been limited to that purpose.

5.      Respondent's Motion for Summary Dismissal (Dkt. 14) is GRANTED. The Petition for Writ of Habeas Corpus is dismissed.

6.      A certificate of appealabilty will not issue in this case. If Petitioner files a

**MEMORANDUM DECISION AND ORDER - 20**

timely notice of appeal, and not until such time, the Clerk of Court shall

forward a copy of the notice of appeal, together with this Order, to the

Ninth Circuit Court of Appeals. The district court's file in this case is

available for review online at www.id.uscourts.gov.



DATED: February 4, 2013

Honorable Candy W. Dale
United States Magistrate Judge

**MEMORANDUM DECISION AND ORDER - 21**